```
                         UNITED STATES DISTRICT COURT
                         SOUTHERN DISTRICT OF FLORIDA

                         CASE NO. 10-14004-CIV-MOORE
                              (07-14039-CR-MOORE)
                         MAGISTRATE JUDGE P.A. WHITE
```

ANNIEL GOMEZ,                        :

    Movant,                      :

v.                                   :         REPORT OF
                                                 MAGISTRATE JUDGE

UNITED STATES OF AMERICA,            :

    Respondent.                  :
_____

    Anniel Gomez filed a pro se motion to vacate pursuant to 28 U.S.C. §2255, attacking his conviction and sentence imposed pursuant to a guilty plea in Case No. 07-14039-cr-Moore.

    This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2255 Proceedings for the United States District Courts.

    For its consideration of the motion to vacate (Cv-DE#1), the Court reviewed the petitioner's motion, the government's responses to an order to show cause with multiple exhibits (Cv-DE#15& 16), and the underlying criminal file. Gomez's sentence was affirmed by the Eleventh Circuit Court of Appeals, *United States v Gomez,* 334 Fed. Appx. 242 (CA 11 2009), and the mandate issued July 15, 2009. This motion filed on *January 4, 2010,* is timely filed pursuant to the mailbox rule.

Gomez raises the following claims:

1. Counsel's actual conflict of interest adversely affected his performance.

2. Counsel was ineffective at sentencing.

3. The District Court permitted the conflict of interest to exist.

4. Petitioner is actually innocent of murder, which increased his base offense level and sentence.

Factual and Procedural History

On August 2, 2007, Gomez and eight others were charged with nine offenses arising out of their ownership and operation of an extensive net-work of marijuana grow-houses in the Ft. Pierce area. On September 12, 2007, Gomez pleaded guilty to a two count Superseding Information charging him with conspiracy to maintain a place for the manufacture and distribution of marijuana (Count 1), and conspiracy to manufacture and distribute 100 or more marijuana plants (Count 2).

The facts leading to Gomez's arrest are as follows:[1] Members of the St. Lucie County Sheriff's Office responded to an anonymous complaint about a possible grow house. In addition to the marijuana and contraband, officers found documentary connections to various other grow houses, which were also searched. These houses were located in single family residences operated and controlled by

---

[1] These facts are contained in the Pre- Sentencing Report (PSI), the government's proffer at the Change of plea hearing, and the Appellate Mandate.

2

Anniel Gomez. This extensive network of grow houses were overseen mainly by Gomez family members, including his half brother, uncle and mother.

At least seven locations were discovered and searched, and all participants apprehended. Pursuant to their arrests, several defendants made statements incriminating Gomez and his half brother. Searches resulted in seizures or documenting of almost 1200 germinating marijuana plants.

Around late April or early May of 2007, Gomez's Uncle, Jesus Miranda, demanded additional money from Gomez for his efforts in the operation. When presented with less than he requested, a fist fight ensued between the two. Miranda overpowered Gomez in the kitchen, and Gomez grabbed a large kitchen knife off the counter and stabbed Miranda five times in the chest and back. Miranda fell to the floor and Gomez again stabbed Miranda in the chest. Gomez and his brother attempted to dispose of the body by starting three separate fires in Miranda's House. His charred remains were eventually discovered on May 11, 2007. Gomez and his brother fled to Mexico. They were incriminated in the homicide by post- arrest statements of their co-defendants, and with their aid, lured back into the United States and taken into federal custody.

On September 12, 2007, the Government filed a two count Superseding Information. On that date, the petitioner appeared before a Magistrate Judge to enter a plea to the Superceding Information. (DE#15, Ex 3-4) Gomez admitted his guilt to both counts in the Information. In the agreement he stated he understood that Count 1 carried a possible statutory maximum of twenty years and Count 2 carried a mandatory minimum of five years, along with a possible statutory maximum of 40 yrs. He acknowledged that the

District Court could impose any sentence within that range, and that the District Judge had the right to fashion his judgement based on Gomez's background and circumstances of his case.

In exchange for the plea, the government agreed to recommend that the sentences run concurrently and to advise a sentence at the low end of the guideline range. They further agreed to recommend a two level reduction in his offense level for his timely acceptance of responsibility, with a possibility of a third level reduction at the time of sentencing. The agreement warned the petitioner he could not withdraw his plea solely as a result of the sentence imposed.

Within the government's factual proffer (DE#15-5 p.14) was included the facts that the defendant's Uncle Miranda, who worked at a grow house during the time of the conspiracy, was stabbed to death by the petitioner. The defendant understood that there may be guideline implications regarding that death.[2] The Magistrate Judge recommended that the plea be accepted, as knowing and voluntary. The Report was adopted by Judge K. Michael Moore and sentencing set for December 10, 2007.

The Pre Sentence Investigation Report (PSI) identified Gomez as the "leader and organizer of this criminal activity that involved five or more criminal participants and was responsible for the construction and operation of seven grow houses which, during the time of the conspiracy, produced at least 1154 marijuana plants" PSI ¶70.

The PSI recommended an offense level to be set pursuant to USSG

---

[2] The government contends that it appears Gomez's attorney received an assurance from the government that it would not proceed with a murder charge, but that it would be an aggravating factor to be considered in the petitioner's sentence on the marijuana charges. ((DE#15 p.3-4)

§2A1.2, based upon the second degree murder of the defendant's uncle, which was perpetrated in furtherance of the drug offense. PSI ¶26-47,85. This conclusion was based upon documentary and circumstantial evidence, and corroborated by numerous inculpatory statements made by Gomez's co-defendants.

Prior to sentencing, the government filed objections seeking to deny the defendant's acceptance of responsibility, due to defendant's statement in the PSI at ¶82 not being sufficiently detailed and to increase his offense level by two levels for obstruction of justice. The government submitted that Gomez provided law enforcement with false and misleading information concerning the grow house operation and the circumstances surrounding the death of his uncle.

The petitioner was represented by Attorney Kreiss, who filed a motion to withdraw two days later, citing conflict with the petitioner and irreconcilable differences. This was denied without a hearing. Sentencing was continued and a hearing was held on counsel's second motion to withdraw. The petitioner claimed he had signed the plea agreement against his will. The motion to withdraw was denied. Counsel for the defendant filed objections to the PSI stating that the death of Miranda constituted voluntary manslaughter and the base level offense should have been 29, not 38. (DE#15 Ex9)

Days later, counsel filed a motion to withdraw the guilty plea on the defendant's behalf. (DE#15 ExXH 10). Counsel stated the plea was not freely and voluntarily entered, in that the factual stipulations would affect his sentence. The Court appointed new counsel and set an evidentiary hearing.

On March 26, 2008, an evidentiary hearing was held on

defendant's motion to withdraw his guilty plea before the Magistrate Judge (DE#15 Ex 12). The defendant testified that he wished to admit his guilt to the marijuana operation when he entered into the guilty plea, but not to the death of his uncle. He testified that counsel never explained to him the consequences of accepting the factual proffer. He contended that he if knew he would be held responsible for his uncle's murder for sentencing purposes he would not have entered into the plea. However, on cross examination he acknowledged that he had agreed with the factual basis provided by the government which included information about his part in the death of his uncle, and that he understood "there were consequences or there might be consequences from the homicide and death" of his uncle.

The Magistrate Judge found the defendant fully understood the events that had occurred during his change of plea hearing on September 12, 2007, and that he had not met the burden needed to challenge his guilty plea. (DE#15 Exh 12 p. 37-39). The Court determined that the defendant understood he was pleading to the marijuana charges and was fully aware that there might be Guideline consequences for the death of his uncle. The Magistrate Judge denied the motion and issued a Report. The petitioner filed objections and the Report was subsequently adopted by the District Court. [3]

The movant filed a <u>pro-se</u> motion on May 28, 2008, to withdraw his guilty plea, which was denied without hearing. On May 30, 2008, the PSI was revised and the petitioners guideline range was 168-210 months. PSI¶133.

On June 9, 2008, sentencing was held before United States

---

[3] The petitioner filed a motion to vacate his guilty plea in case no. 08-14191-Civ Moore, prior to sentencing. Judge Lynch Recommended the motion be denied as it presented no new facts. The Report and Recommendation were adopted.

District Judge K. Michael Moore. (DE#15 Exh 17-1 & 2) At the hearing, Gomez attempted to argue the facts proffered by the government to establish that he committed voluntary manslaughter. The government offered two witnesses to support their argument that the crime was second degree murder. Aznia Miranda testified that during the fight Gomez grabbed a knife and stabbed Miranda twice in the back. When Miranda fell to the floor, Gomez crouched down next to him and stating he deserved it, stabbed Miranda in the chest. Aznia further stated he heard Gomez admit he killed his uncle. This was verified by another witness. Gomez testified he was not present when his uncle was killed.

After hearing from two cooperating witnesses and the defendant, the Court determined that the overwhelming evidence demonstrated that the defendant had both lied on the stand, and committed second degree murder. He sustained the government's objections and ordered the defendant not be given the three level downward adjustment for acceptance of responsibility and also be given a two level upward adjustment for obstruction of justice. (DE#16)

Based on its rulings, the Court found that the defendant had a combined guideline range of 292-365 months (Offense Level 40) criminal history category I, pursuant to the PSI and rulings of the Court. He was sentenced to 240 months (the statutory maximum) as to Count 1, and 365 months as to Count II.

The petitioner appealed to the Eleventh Circuit Court of Appeals raising the following issues:

1) the trial court erred when it failed to permit the defendant to withdraw his guilty plea
2) the trial Court erred in calculating the Guidelines

7

>utilizing the base offense level associated with second degree murder versus voluntary manslaughter
>3) the trial court erred by increasing the offense level for obstruction of justice
>4) the trial court erred by failing to award a three level reduction for acceptance of responsibility
>5) the trial court erred in imposing an unreasonable sentence

The Appellate Court affirmed the Judgment of the District Court, and the Mandate issued on July 15, 2009 (Exhibit 21) United States v Gomez, supra.

Analysis and Law

There are three types of issues that a section 2255 motion cannot raise: (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) non-constitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, unless the section 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from failure to appeal. Belford v. United States, 975 F.2d 310 (7 Cir. 1992).

However, a claim of ineffective assistance of counsel may constitute cause for failure to previously raise the issue. United States v. Breckenridge, 93 F.3d 132 (4 Cir. 1996). Attorney error does not constitute cause for a procedural default unless it rises to the level of ineffective assistance of counsel under the test enunciated in Strickland v. Washington, 466 U.S. 668 (1984), which is discussed in further detail, *infra*. Murray v. Carrier, 477 U.S. 478, 488 (1986).

For Gomez to succeed on a claim of ineffective assistance of

counsel, he must demonstrate that counsel's performance was deficient, and that there is a reasonable probability that, but for counsel's errors, the result would have been different, in other words that the petitioner was prejudiced as a result of counsel's performance. <u>Strickland v Washington</u>, 466 U.S.668 668, 694 (1984); <u>Chandler v. United States</u>, 218 F.3d 1305 (11th Cir. 2000)(*en banc*). The standard is the same for claims of ineffective assistance on appeal. <u>Matire v. Wainwright</u>, 811 F.2d 1430, 1435 (11 Cir. 1987). A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied. <u>Id</u>. at 697; <u>Waters v. Thomas</u>, 46 F.3d 1506, 1510 (11 Cir. 1995). Prejudice in the sentencing context requires a showing that the sentence was increased due to counsel's error. <u>Glover v. United States</u>, 531 U.S. 198, 203-204 (2001).

In the context of a case in which guilty pleas or the equivalent were entered, application of the second prong of the two-prong <u>Strickland</u> standard requires a showing that there is a reasonable probability that but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial. <u>Hill v. Lockhart</u>, 474 U.S. 52 (1985).

<u>Claim 1</u>

Gomez claims that he did not want to plead guilty to murder, only to the marijuana offenses. This resulted in a breakdown of communication and a conflict of interest arose between himself and his first counsel, following the change of plea and before sentencing.

A movant claiming that counsel labored under a conflict of interest in violation of the Sixth Amendment must demonstrate that:

(1) his attorney had an actual, not speculative, conflict of interest, and (2) the conflict adversely affected counsel's performance. United States v. Novaton, 271 F.3d 968, 1010-1011 (11th Cir. 2001), citing Cuyler v. Sullivan, 446 U.S. 335, 348 (1980); accord, United States v. Ettinger, 344 F.3d 1149, 1161 (11th Cir. 2003). A defendant who fails to show both an actual conflict and an adverse affect is not entitled to relief. United States v. Novaton, 271 F.3d 968, 1010 (11th Cir. 2001); Burden v. Zant, 24 F.3d 1298, 1305 (11th Cir. 1994).

Once a defendant demonstrates that a conflict of interest actually affected his representation, he need not demonstrate prejudice to obtain relief. Novaton, supra at 1010. Rather, "[p]rejudice is presumed...if the defendant demonstrates that ... 'an actual conflict of interest adversely affected his lawyer's performance.'" Strickland, 466 U.S. at 692, quoting, Cuyler, 466 U.S. at 358; Burden v. Zant, 24 F.3d 1298 (11th Cir. 1994); Porter v. Singletary, 14 F.3d 554 (11th Cir. 1994). In this case, the movant needs to first establish the actual conflict. The movant provides no evidence to support his assertion that an actual conflict of interest existed.

Even if we were to assume that an actual conflict of interest existed between the movant and his attorney, the movant must show that his attorney's performance was "adversely affected" by the conflict. It is true that a movant need not show that the result of the proceeding would have been different without the conflict of interest, only that the conflict had some adverse effect on counsel's performance. Strickland, 466 U.S. at 694. To prove an adverse effect, a defendant must: 1) "point to some plausible alternative defense strategy or tactic" that might have been pursued, 2) "demonstrate that the alternative strategy or tactic was

10

reasonable" under the facts in his case, and 3) "show some link between the actual conflict and the decision to forgo the alternative strategy of defense."[4] Novaton, supra at 1011, citing Freund v. Butterworth, 165 F.3d 839, 860 (11 Cir. 1999) (en banc). In the absence of a showing of an "adverse effect," prejudice is not presumed to flow from a conflict of interest. Id. In this case, no actual conflict or adverse effect has been demonstrated.

Gomez is clearly dissatisfied with his plea, because his sentence was ultimately enhanced by his murder of his uncle. However, this result was both explained to him by his initial counsel, and agreed to by him in open Court, and does not result from a conflict of interest between himself and counsel. Gomez claims he did not want to plead to the murder of his uncle. He never did plead to the murder, but admitted in open court that he understood that there would be sentencing consequences to his uncle's murder.

His attempt to claim that his attorney failed to inform him there would be consequences at sentencing resulting from his uncle's murder was found to be without merit by the Eleventh Circuit Court of Appeals, who found that Gomez had failed to provide the court with a just reason to vacate his guilty plea.

The plea was both voluntary and knowing,[5] and statements made

---

[4] In other words, he must establish that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests. Novaton, supra at 1011, citing, Freund, 165 F.3d at 860.

[5] To ensure that a plea is voluntary and knowing, Fed.R.Cr.P. 11(b)(1) states that "the court must address the defendant personally in open court before accepting the plea and inform the defendant of, and determine that the defendant understands . . . the nature of each charge to which the defendant is pleading." Gordon v. United States, 496 F.3d 1270, 1277 (11th Cir. 2007).

during a Rule 11 Plea Colloquy are given a strong presumption of truth. Blackledge v Allison, 431 U.S. 63, 74 (1977).

Further, the conflict did not affect any critical proceeding because Attorney Kreiss withdrew after the conflict arose. He attempted to withdraw several times, and was denied by the District Court. Although a conflict arose, Attorney Kreiss filed a motion to withdraw the guilty plea and filed objections to the PSI. He preserved the defendant's claims for appeal. He refused to testify for the government at the hearing held on the motion to withdraw the guilty plea, so as not to jeopardize his client's interests. He was ultimately permitted to withdraw and Gomez was represented by new counsel at the sentencing hearing. The results of the sentencing hearing, which are unsatisfactory to Gomez, are not related to the representation of his former attorney. Thus, there was no ineffective assistance of counsel. Strickland, supra.

Claim 2

The petitioner claims that his new counsel was ineffective during sentencing by failing to object to the weight of the marijuana plants. The movant is attacking the calculations in his Pre-Sentence Report, and the claim is without merit. Claim 2 of the Superseding Information charged movant with conspiring to manufacture and distribute 100 or more plants. During the plea colloquy the petitioner stipulated to 100 or more plants. The calculations in the PSI are based upon 100 or more plants. PSI¶1. The total number of plants attributable to the movant was 1,154

---

Thus, "[a] court accepting a guilty plea must comply with Rule 11 and specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (2005).

plaints. Since the weight of the plants was not a controlling factor in determining his sentence and not a point of contention, he cannot establish any error or prejudice.

Claim 3

In claim three he states that the District Court denied him effective assistance of counsel and permitted the conflict of interest to continue by denying Attorney's Kriess's motion to withdraw, and by denying his motion to vacate his plea. This claim is clearly without merit.

In the first place, the District Court appointed new counsel for the hearing on his motion to vacate his plea, and denied the motion based upon the overwhelming evidence before it. Secondly, this issue was placed squarely before the Appellate Court who stated:

> The District Court did not abuse its discretion by denying Gomez's motion to withdraw his guilty plea. Gomez argued that (Att) Kriess failed to inform him that the murder would be included in the calculation of his sentence, but Gomez admitted during his plea colloquy that the murder carried guideline consequences" See United States v Medlock, 12 F.3d 185 (11 Cir. 1994). Gomez failed to provide the Court with a just reason to withdraw his guilty plea. United States V Gomez, supra.

Claim 4

In claim 4, the movant alleges he is innocent of the murder allegation which increased his base offense level. The District Court, following the sentencing hearing found overwhelming evidence, corroborated by witnesses that the movant was responsible for the death of his uncle. The movant introduces an affidavit from a fellow inmate to support his claim, which states that the movant's brother told the inmate that he only accused his brother of murder because he wanted a reduced sentence. He states that Gomez's brother- in- law Lazaro was actually guilty of the murder.

This self-serving affidavit, filed after the fact, raising the name of a possible murderer never named as such before is not only not credible, but flies in the face of all the evidence, considered overwhelming by the District Court, and affirmed by the Appellate Court.

The Appellate Court states clearly that the record supports the factual findings of the District Court, as stated: "Testimony at the sentencing hearing established that Gomez stabbed Jesus Miranda several times and intended to kill him". This claim is completely without merit.

### Conclusion

Gomez admitted voluntarily, in open court that he was guilty of the marijuana offenses. He was given ample notice that the murder of his uncle would affect his sentencing.  He cannot now attempt to take back his plea because he is not happy with his sentence. He has failed to demonstrate ineffective assistance of counsel. <u>Strickland</u>.

It is therefore recommended that this motion to vacate be

denied.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Dated this 18th day of August, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Anniel Gomez, Pro Se
     Reg#77980-179
     FCI-Estill
     Address of Record

     Diana M. Acosta, AUSA
     Office of US Attorney
     Ft. Pierce, FL
     Address of Record

15